UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal Case No. 25-379 (PJS/DLM)

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **MOTION TO DISMISS** |
| JEFFREY ALAN PETERSEN, | ) | |
| Defendant. | ) | |

Defendant Jeffrey Petersen, through undersigned counsel, hereby moves the Court for an order dismissing the Indictment against him on the grounds that it fails to state an offense, and the conduct alleged is protected by the First Amendment right to free speech. The Indictment contains ten counts alleging violations of 18 U.S.C. § 115(a)(1)(B) consisting of threatening to murder United States judges (Counts 1-8) and congresspersons (Counts 9-10). There are also ten counts (11-20) alleging violations of 18 U.S.C. § 875(c) for transmitting in interstate commerce threats to injure people, which appear to arise out of the same conduct alleged in Counts 1-10. All of the charges are based on internet comments that Mr. Petersen allegedly posted or attempted to post in response to online news articles about actions taken by the respective judges or congresspeople. None of the comments were communicated to the persons allegedly threatened, and there was no reasonable prospect that the objects of the comments would be aware of them. The comments communicated wishes or predictions of death, but did not indicate any plan by Mr. Petersen to kill the officials.

The 8th Circuit has instructed that "An indictment adequately states an offense if: it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." United States v. Hayes, 574 F.3d 460, 472 (8th Cir. 2009)(quoting United States v. Sewell, 513 F.3d 820, 821 (8th Cir.), cert. denied, 553 U.S. 1066, 128 S. Ct. 2517, 171 L. Ed. 2d 789 (2008)). "While it is generally enough for an indictment to track statutory language . . . simply tracking statutory language does not suffice, when the resulting indictment fails to 'fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the [offense] intended to be punished." United States v. Johnson, 981. F.3d 1171, 1179 (11th Cir. 2020).

18 U.S.C. § 115(a)(1)(B) applies to whoever

> threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under such section,
>
> with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties

Mr. Petersen's alleged statements as set forth in the Indictment were not threats to murder any of the respective officials. Counts 1-10 are insufficient because they fail to even set forth or even summarize any of the statements that were allegedly threats. In the absence

of any explanation of the words that were allegedly threats, the elements of the offense cannot be established, and Mr. Petersen cannot determine what conduct is being accused of, much less whether to plead or go to trial to defend against. The Indictment further provides no explanation of how the threats were made in retaliation on account of performance of official duties.

It is possible that the Court will consider reading the Indictment as a whole and interprets Counts 1-10 to mirror Counts 11-20, since the Counts contain the same dates and contain similar references to the various judges and officials (while not actually identifying them). The defense contends that this is not permissible since each Count of the Indictment must contain sufficient information on its own. However, a consideration of the description of the purportedly threatening statements establishes that no offense was committed. For the same reason Counts 11-20 do not demonstrate any threats to injure another person as required by 18 U.S.C. § 875(c).

**Count 1, 11** contains four statements. The first one states, "That POS Judge, [District Judge 1], MUST have her life July 13, United States District Judge 1 ENDED Immediately! Get it 11 of the Central District of done, Patriots !!" This statement is not a threat by the person making the statement to kill the judge but expressing a wish that the judge have her life ended and vaguely calling on others to make it happen.

The next statement reads, "2 Questions: Why has No One Killed that POS judge, [District Judge 1]" YET? For Christs sake, Patriots, what the Hell are you waiting for?"

Again this statement is not a threat to kill the judge asking why others have not killed the judge.

The next statement, "WORNG! [sic] For Christs sake, that POS judge does NOT deserve to remain Above Ground another Minute -- let alone, another Day! " This again clearly not a threat but merely a statement of opinion that the respective judge does not deserve to live.

The final statement in Counts 1 and 11 states, "If I was President, I Definitely would have that POS judge, [District Judge 1], Executed Immediately!" This statement clearly is not a threat by the writer to kill the judge but merely states that he would have the judge executed if he was the president. Since the writer is obviously not the president, he is informing readers that he is not in any position to kill the judge. When all four statements are read as whole, it is patently clear that the writer is not threatening to kill or harm the judge but stating an opinion that the judge should be killed and perhaps wishing he had the power to do it, while revealing he does not have any such power.

**Counts 2, 12** - "That POS, rigger, [sic] District Judge [District Judge 2], will SOON be DEAD! Mark my words! Afterward, III be throwing a Huge Party --- with NO riggers Allowed!" This statement is clearly not a threat to kill the judge but a prediction that the judge will be dead.

**Counts 3, 13** contain two statements. The first states, "GREAT NEWS: That POS

District Judge, [District Judge 3], will soon be Deceased! And, III be throwing a HUGE party afterward -- for white people, July 15, United States District Judge 3 ONLY, of course! Wish me Luck!" Again this is merely a prediction that the judge will die, and not a threat to kill them. The next statement - "WRONG! That POS District Judge, [District Judge 3], will soon be Deceased! Mark my words! And, thank ME afterwards!" - is also merely a predictions.

**Counts 4, 14** - contains two similar statements: "I know where that POS, [United States Judge 4], lives -- and I GUARANTEE that she will soon be Dead -- FINALLY! Afterward, I will be throwing a Huge Party! ALL White Supremacists, in good standing are invited to attend the Celebration!." And "Retard Ryan, I know where that POS, [United States Judge 4], lives - and I GUARANTEE that she will soon be Dead - FINALLY! That BS Dept. Of Education will soon be DEAD, as welll And YOU deserve the SAME!" Again, these statements are merely predictions that the judge will be dead, (albeit apparently confident predictions). The writer is clearly not stating that he will kill the judge. The context of the statements all makes clear that the writer is arguing with others who are commenting on the post, and is not making any sort of true threat to kill the judge.

**Counts 5, 15** - "The POS, Judge [District Judge 5], will soon be Deceased! I GUARANTEE it! I know EXACTLY where, in NY, he lives! Be sure to send black floweres [sic] to his wake! And wish me Luck!" Similarly this is a statement of prediction

5

that the judge will die. There is no actual threat by the writer to kill the judge. He is merely claiming to know about the judge, including where he lives, and therefore can predict he will die. Of course any reasonable person reading the statement can tell that it is nonsense, and therefore not a true threat.

**Counts 6, 16** - "GREAT NEWS: I intend to make CERTAIN that POS United States District Judge 6 rigger, Judge [District Judge 6], recieves [sic] his (much Deserved) Execution! I know EXACTLY where he lives in Turnersville, NJ! Consider him Dead!" The writer of this statement is again not stating that he will personally kill the judge, but stating that he will see to his execution. Since execution requires a legal process, it is clear that the writer does not have the power to personally carry it out, and is also not serious about the statement.

**Counts 7, 17** - "That POS woman Judge, [District Judge 7], will SOON receive her, Much Deserved, Execution! I know where, in Portland, she lives! Consider her DEAD!" The writer of this statement is again not stating that he will personally kill the judge, but stating that he will see to his execution. Since execution requires a legal process, it is clear that the writer does not have the power to personally carry it out, and is also not serious about the statement.

**Counts 8, 18** - "That POS U.S. District Judge, [District Judge 8], will soon be pushing up Dasies! [sic] I know Exactly where she lives in Maine! Wish me Luck!" Assuming for the purposes of argument that "pushing up Dasies" is an expression

6

meaning to be dead and buried, the writer is again merely making a prediction that the judge will be dead. There is nothing in the statement that indicates the writer personally intends to kill her.

**Counts 9, 19** - "That POS, [United States Official 9], will soon be Dead! I know EXACTLY where he lives in LA County! III be throwing a Huge party, afterward! ALL White Supremacists, in good standing, are invited!" The writer is again merely predicting that the congressperson will be dead, and stating he will throw a party afterwards. There is nothing in the statement indicating that the writer is personally going to kill the congressperson.

**Counts 10, 20** - "This is GREAT! Now I can use a, high-powered, firearm to take care of [United States Official 10, [United States Official 9], [United States Official 11], [United States Official 12], and the Squad members [United States Officials 13 - 19] -- for starters! Wish me Luck!" The meaning of this statement cannot reasonably be ascertained without further context. What was the writer responding to? He is not stating that he will actually shoot eleven congresspeople but that he "can" use a high-poweed firearm. No reasonable person would believe that the writer is actually serious about hunting down seven congresspeople.

The Indictment, in its introductory explanation of Counts 11-20 reveals that all of the statement in question were "online posts." The statements referenced, when considering they were online posts, are insufficient to constitute threats to kill or harm

other people. There is no basis provided to believe that anyone reading these statements as comments to an article would take them seriously at threats, rather than just a person venting anger at the respective officials.

It is significant that Mr. Petersen was engaging in political discussion in response to actions by various government officials, and his comments must be analyzed in that context. As explained in the 10th Circuit decision,

> Section 875(c), like all threat statutes, "must be interpreted with the commands of the First Amendment clearly in mind." Watts v. United States, 394 U.S. 705, 707, 89 S. Ct. 1399, 22 L. Ed. 2d 664 (1969). Thus, such statutes apply only to "true threat[s]"—i.e., threats outside the protective scope of the First Amendment. [United States v.] Viefhaus, 168 F.3d 392 at 397 [(10th Cir. 1999)]. The Supreme Court in Virginia v. Black defined "true threats" as "statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." 538 U.S. 343, 359, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003). Such a threat must be "a serious threat as distinguished from words as mere political argument, idle talk or jest." [United States v.] Leaverton, 835 F.2d 254 at 256 [(10th Cir. 1987)].

United States v. Wheeler, 776 F.3d 736, 742-743 (10th Cir. 2015). Mr. Petersen's obscure comments in response to online news article cannot be deemed a serious expression of intent to commit an unlawful act of violence, but was clearly idle talk or jest.

An instructive case is United States v. White, 670 F.3d 498, 513 (4th Cir. 2012) where the appellate court affirmed a judgment of acquittal for threats if violation of Section 875(c) based on internet posts referencing the firebombing of a civil rights activists house and stating "Good, Now someone do it to [the victim]," and stating that the victim is an enemy of humanity and "must be killed." White held that the posts did not

8

express an intent to kill the victim, and that merely calling on others to kill someone who the defendant had not control over was more "political hyperbole" than a "true threat." Id. Mr. Petersen allegedly calling on others to kill various officials whom he did not know or have control over was similarly political hyperbole rather than a true threat.

Another instructive case is United States v. Bagdasarian, 652 F.3d 1113 (9th Cir. 2012) which reversed a conviction for threatening to kill a candidate for President of the United States for insufficient evidence. The defendant in this case made the following online posts: (1) "Re: Obama fk the niggar, he will have a 50 cal in the head soon" and (2) "shoot the nig." Id. at 1115. Although describing these statements as "repugnant", Bagdasarian found them to be insufficient to constitute criminal threats. Id. It held that the statements were not objectively a threat because they merely a prediction and advocating that the presidential candidate be killed, did not convey a threat by the defendant to personally injure or kill the president. Id. at 1119. Bagdasarian further held that the statements were insufficient to how that the defendant had the required subjective intent to carry threaten the presidential candidate.[1] Id. at 1123. Mr. Petersen's alleged social media posts similarly predicted and advocated that various officials be killed but did not convey a threat to carry out any killings himself.

---

[1] Although there was circuit split on whether subjective intent was a required element of the respective statutes at the time of the Bagdasarian decision, the Supreme Court has since held due to First Amendment constraints, subjective intent is required to criminally convict a defendant for threatsprove violations of both Sections 115(a)(1) and 875(c). Counterman v. Colorado, 600 U.S. 66, 75-77 (2023); Elonis v. United States, 575, U.S. 723, 737-740 (2015).

In United States v. Fenton, 30 F. Supp. 2d 520 (W.D. Penn. 1998), the district court granted a judgment of acquittal on verdict for violation of 18 U.S.C. § 115(a)(1)(B) where the defendant stated that he was going to shoot the head off of a congress person and insurance company executive and was going to kill all of the insurance company employees. Id. at 522-23. Fenton held that the statements were not threats because there was no connection between the recipient of the communication and the persons purportedly being threatened, which negated the elements that there were any true threats or there was intent to retaliate or impede. Id. at 526-528. The 2nd Circuit has recognized that Section 875(c) requires that the defendant intent to communicate their threat to the threat's target in order to satisfy the element that there was a communication of the threat. United States v. Kelner, 534 F.2d 1020, 1023 (2d Cir. 1976). See also United States v. Leveke, 38 F.4th 662, 666, 668 (8th Cr. 2022)(emphasizing that defendant's threats to commit a mass shooting at the state legislature were communicated to a legislator directly by emails and voice mail in holding that the statement was a true threat). Similarly in the instant case, there is no indication that the alleged online comments by Mr. Peterson where ever communicated or were intended to be communicated to the officials that he named in the comments. Again, the posts were merely angry venting and could not be deemed true threats.

## CONCLUSION

For the foregoing reasons, Mr. Petersen respectfully requests that the Court grant his motion to dismiss the Indictment against him on the grounds that the allegations are insufficient on their face to support the charges.


Dated:  December 9, 2025                         LAW OFFICE OF JORDAN S. KUSHNER

                                                                           By s/Jordan S. Kushner
                                                                             Jordan S. Kushner, ID 219307
                                                                             Attorney for Defendant
                                                                             431 South 7th Street, Suite 2446
                                                                             Minneapolis, Minnesota  55415
                                                                             (612) 288-0545
                                                                             jskushner@gmail.com