UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
25-379 (PJS/DLM)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | GOVERNMENT'S OPPOSITION TO |
| v. ) | DEFENDANT'S MOTION TO DISMISS |
| ) | INDICTMENT |
| JEFFREY ALAN PETERSEN, ) | |
| a/k/a JEFFREY ALLEN PETERSEN, ) | |
| ) | |
| Defendant. ) | |

The United States of America, by and through its undersigned attorneys, hereby respectfully submits its response to the defendant's motion to dismiss the Indictment. (ECF 30)  The defendant moves to dismiss on two grounds.  First, that the Indictment purportedly "fails to state an offense," and second, that "the conduct alleged is protected by the First Amendment right to free speech."  (ECF 30 at 1) Because the charges in the Indictment track the statutory language of the offenses charged and fairly provide the defendant sufficient information to allow him to plead and bar a subsequent prosecution, the Indictment is facially sufficient, and because whether the defendant's alleged speech constitutes true threats to injure or to murder is decisively a question reserved for the jury as the fact-finder, the defendant's pretrial motion to dismiss should be denied.

<u>Relevant Procedural History and General Factual Background</u>

In October 2025, a grand jury returned a 20-count Indictment against the defendant charging him with 10 counts of threatening to murder 19 United States Officials (namely, eight federal judges, including an Associate Supreme Court

Justice, and eleven Congresspersons), in violation of 18 U.S.C. § 115(a)(1)(B) (Counts 1 – 10), and with corresponding 10 counts of interstate transmission of a threat to injure (namely, the *same* eight federal judges and eleven Congresspersons), in violation of 18 U.S.C. § 875(c) (Counts 11-20).   (ECF 1)

Between July 13 and July 21, 2025, the defendant made a series of online posts directed at various federal judges and Congresspersons from a variety of districts and jurisdictions, threatening to kill them or encouraging that they be killed and in some instances guaranteeing that they would be dead, that the defendant knew where the victims lived, and that others should thank him after their deaths.   The defendant used pseudonyms and usernames of notorious mass shooters to make his posts, such as James Holmes (2012 Aurora Colorado theater), Adam Lanza (2012 Sandy Hook Elementary), and Anders Behring Breivik (2011 Norway). The online posts made by the defendant were comments in response to online news articles featuring a ruling made by the particular federal judges in a case they presided over or involved the particular Congressperson's position on an issue or legislation.   The defendant's posts used thinly veiled racial epithets (e.g., *rigger* instead of *n****r*), derogatory terms (e.g., POS), and touted white supremacy, and in one post specifically referred to his using "a high-powered firearm to take care of" named Congresspersons.   (ECF 1)

During a voluntary, non-custodial interview with the FBI, the defendant admitted to making some of the online posts and agreed that his posts "got out of hand."   The defendant told the FBI that he read the online articles, got very upset

(with what he read), and then made the online posts based on the articles he read. The defendant admitted that the comments he made could be interpreted as "scary."

## **ARGUMENT**

1. *The Indictment is facially legally sufficient.*

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). It is well settled that as long as "the indictment contains a facially sufficient allegation," it "survives a motion to dismiss for failure to state an offense." *United States v. Sholley-Gonzalez*, 996 F.3d 887, 893 (8th Cir. 2021) (citing *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001)). "An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to subsequent prosecution." *United States v. Flute*, 929 F.3d 584, 587 (8th Cir. 2019) (quoting *United States v. Fleming*, 8 F.3d 1264, 1265 (8th Cir. 1993), & reversing dismissal of indictment). Indeed, an indictment is usually sufficient unless it is "so defective that it cannot be said, by any reasonable construction, to charge the offense." *United States v. Palmer*, 917 F.3d 1035, 1039 (8th Cir. 2019) (quoting *United States v. Mann*, 701 F.3d 274, 288 (8th Cir. 2012)); *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008).

The Indictment filed against the defendant readily satisfies these legal standards and meets the Rule 7(c) requirements. 18 U.S.C. § 115(a)(1)(B), as

charged in Counts 1 through 10, provides that "[w]hoever . . . threatens to assault, kidnap, or murder, a United States official, [or] a United States judge, . . . with intent to retaliate against such official, [or] judge, . . . on account of the performance of official duties, shall be punished . . . ."   18 U.S.C. § 115(a)(1)(B).

Counts 1 through 10 of the Indictment essentially track this exact statutory language by alleging that the defendant "did knowingly threaten to murder [the specific United States judge or official], with intent to retaliate against said [United States judge or official] on account of the performance of official duties, all in violation of 18 U.S.C. § 115(a)(1)(B) and (b)(4)."   (ECF 1, Counts 1-10) "An indictment is normally sufficient if its language tracks the statutory language." *United States v. Jawher*, 950 F.3d 576, 579 n.2 (8th Cir. 2020) (quoting *Sewell*, 513 F.3d at 821). Because Counts 1 through 10 are nearly verbatim of the statutory language charged, those Counts of the Indictment are facially sufficient, and the defendant's motion to dismiss should be denied.

The defendant asserts—without citation to any authority—that Counts 1 through 10 are insufficient because they fail to set forth or even summarize the statements that make up the alleged threats to murder.   (ECF 30 at 2) But the defendant "has not cited any binding precedent that requires the government to quote the alleged threats in the indictment."   *United States v. Abdulkadir*, 2016 WL 659711, at *3 (D. Minn. Feb. 18, 2016) (denying defendant's motion to dismiss indictment charging § 115(a) threats to murder United States judge and federal officers and § 875(c) threats to injure).   *See generally United States v. White*, 241 F.3d

1015, 1021 (8th Cir. 2001) (noting that "[u]sage of a particular word or phrase in the indictment is not required" if Court can recognize a "valid offense and the form of the allegation 'substantially states the element[s].'"). *See also United States v. White*, 610 F.3d 956, 958-59 (7th Cir. 2010) (per curiam) (noting that an indictment that "tracks the words of a statute to state the elements of the crime is generally acceptable, and while there must be enough factual particulars so the defendant is aware of the specific conduct at issue, the presence or absence of any particular fact is not dispositive.").

The defendant also claims that the absence of any explanation of the words that make up the alleged threats to murder fails to establish the elements of the § 115 offenses, and he purportedly cannot determine "what conduct [he] is being accused of." (ECF 30 at 2-3) But a "threat to murder" in a § 115 charge is certainly significantly more definitive, and gives the defendant the necessary specificity—even without the specific language of the threat—to defend against than the more generic "threat to injure" in a § 875(c) charge. Counts 1 through 10 on their face put the defendant on notice that the government alleges that, on the specific dates listed, he "threatened to murder" the eight specific United States judges from the various specified districts and courts and the eleven specific Congresspersons from the various specified states. (ECF 1, Counts 1-10) *See White*, 241 F.3d at 1021 (noting that Court "will find an indictment insufficient only if an 'essential element 'of substance' is omitted'"). *See also United States v. Saul*, 2020 WL 2124853, at *4 (D. Neb. May 20, 2020) ("It is neither feasible nor required for an indictment to recount

5

all surrounding factual circumstances.") (construing threats indictment). The essential elements alleged are wholly sufficient to allow the defendant to respond to the charges and to plead double jeopardy after conviction or acquittal should the charges be brought again. *Flute*, 929 F.3d at 587; *United States v. Mallen,* 843 F.2d 1096, 1102 (8th Cir. 1988) (noting that indictment considered sufficient "if it fairly informs the accused of the charges against him and allows him to plead double jeopardy as a bar to a future prosecution"). Counts 1 through 10 cannot be deemed to be "so defective that it cannot be said, by any reasonable construction, to charge the offense." *Palmer*, 917 F.3d at 1039.

18 U.S.C. § 875(c), as charged in Counts 11 through 20, provides that "[w]hoever transmits in interstate or foreign commerce any communication containing . . . any threat to injure the person of another, shall be . . . imprisoned . . . ." 18 U.S.C. § 875(c). Like Counts 1 through 10 of the Indictment, Counts 11 through 20 also essentially track the exact statutory language by alleging that the defendant "did knowingly transmit, in interstate and foreign commerce, communications consisting of online posts containing a threat to injure the person of another . . . in violation of 18 U.S.C. § 875(c)." (ECF 1, Counts 11-20) Because Counts 11 through 20 are nearly verbatim of the statutory language charged, those Counts of the Indictment are also facially sufficient, and the defendant's motion to dismiss should be denied. *Jawher*, 950 F.3d at 579 n.2.

It appears that the defendant asks the Court to turn a blind eye to what is obvious from the Indictment and which the defendant himself acknowledges:

considering the Indictment as a whole, it is plainly obvious that Counts 11-20, alleging the § 875(c) threats to injure, correspond to the same dates and same alleged victims as Counts 1-10, and do in fact specify the specific language of the threats.

Accordingly, because the counts of the Indictment track the statutory language of the alleged charges and state the essential elements under a reasonable construction, the Indictment is sufficient on its face, and the defendant's motion to dismiss should be denied.

2. *A reasonable jury could readily find that the alleged threats constitute "true threats" that fall outside the First Amendment's protections.*

The defendant challenges each of the corresponding § 115(a) and § 875(c) charges (e.g., Counts 1 and 11, 2 and 12, 3 and 13, etc.) on the grounds that they do not constitute "true threats" but instead merely "stat[e] an opinion," are only "predictions," are nonsensical, or are just venting anger. (ECF 30 at 3-8)

It is well-established that the "protections afforded by the First Amendment, however, are not absolute, and [the Supreme Court] has long recognized that the government may regulate certain categories of expression consistent with the Constitution." *Virginia v. Black*, 538 U.S. 343, 358 (2003). Speech that constitutes a true threat is not afforded First Amendment protection. *Id.* at 359. A "true threat" is speech "where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Id.* "Congress meant to proscribe a broad class of threats in Section 875(c)." *Elonis v. United States*, 575 U.S. 723, 734 (2015).

The defendant asserts throughout the majority of his argument that none of the alleged threats in the Indictment constitute "true threats" so that the Indictment should be dismissed. "In the absence of unusual facts though, the question whether a statement amounts to a true threat is a question generally left to a jury." *Brandy v. City of St. Louis, Missouri*, 75 F.4th 908, 915 (8th Cir. 2023). Other Circuits are in accord. *E.g., United States v. Clemens*, 738 F.3d 1, 13 (1st Cir. 2013) (finding that First Amendment is "not a basis on which to take away from a jury the factual question of whether or not defendant's emails conveyed true threats") (collecting cases from various Circuits); *United States v. Stock*, 728 F.3d 287, 298 (3d Cir. 2013) ("In the usual case, whether a communication constitutes a threat or a true threat 'is a matter to be decided by the trier of fact.'"); *White*, 610 F.3d at 959 (rejecting argument to dismiss indictment on First Amendment grounds, because "potential First Amendment concern[s] [are] addressed by the requirement of proof beyond a reasonable doubt at trial, not by a dismissal at the indictment stage"); *United States v. Parr*, 545 F.3d 491, 497 (7th Cir. 2008) (whether statements were true threats is a question for the jury).

Additionally, whether a statement amounts to a true threat is a fact-intensive inquiry "for the fact-finder to determine in the context of the totality of the circumstances in which the communication was made." *United States v. Ivers*, 967 F.3d 709, 718 (8th Cir. 2020). "[T]he communication must be viewed in textual context and also in the context of the totality of the circumstances in which the communication was made." *United States v. Dierks*, 978 F.3d 585, 589 (8th Cir.

2020).  *See United States v. Hart*, 212 F.3d 1067, 1071 (8th Cir. 2000) (noting that "to determine whether a true threat exists," the alleged threat must be viewed "in light of its entire factual context").

Contrary to the defendant's assertions, "[i]n determining whether a statement amounts to an unprotected threat, there is no requirement that the speaker intended to carry out the threat, nor is there any requirement that the speaker was capable of carrying out the purported threat of violence."  *Doe v. Pulaski Cnty. Special Sch. Dist.*, 306 F.3d 616, 624 (8th Cir. 2002).  *See United States v. Dierks*, 978 F.3d 585, 590 (8th Cir. 2020) ("The 'true threat' doctrine only requires that a jury find that a defendant's statement was serious, not literal or even intelligible. Even if 'a person expresses himself in an outlandish, illogical manner,' his statements can be seriously threatening.") (citation omitted).   Given the language of the defendant's posts, including his: guaranteeing that certain of the victims would soon be dead, knowing where the victims live, asking for others to wish him luck, stating that people would thank him afterwards, stating that people should consider certain victims dead, stating that the victim would be "pushing up daisies," stating that he intends to make certain that the victim receives his much deserved execution, and stating that he can use "a high-powered firearm to take care of" the victims, "reasonable jurors could certainly conclude that these statements constitute a 'serious statement or communication which expresses an intention to inflict injury' [on the victim] 'at once or in the future . . . .'" and therefore "constituted a threat based on a consideration of

the alleged statement as a whole, and in the context in which the statements were made.'" *Stock*, 728 F.3d at 298-99.

At bottom, the defendant's arguments are not about the validity of the Indictment within the First Amendment, but instead disputes over meaning and inferences that can be drawn from the totality of the facts and circumstances. *See generally United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001) (noting that federal criminal procedure does not "provide for a pre-trial determination of sufficiency of the evidence"). Whether the defendant's alleged threats constitute mere predictions or nonsense or just venting anger or idle talk or jest, as the defendant claims, (ECF 30 at 3-8), therefore is a factual determination for a jury to decide and is not a basis for dismissing the Indictment. Accordingly, the defendant's motion to dismiss should be denied.

In *United States v. Turner*, 720 F.3d 411 (2d Cir. 2013), the Second Circuit considered and rejected an argument similar to the defendant's here, where the defendant was convicted for making threats against judges in a blog post criticizing a three-judge panel of the Seventh Circuit over a decision upholding a Chicago ordinance regulating firearms. The post contained several statements similar to those posted by the defendant, including:

> Let me be the first to say this plainly: These Judges deserve to be killed. Their blood will replenish the tree of liberty. A small price to pay to assure freedom for millions.
> * * *
>
> These Judges deserve to made [sic] such an example of as to send a message to the entire judiciary: Obey the Constitution or die.

*Id.* at 415.

On appeal, Turner claimed, similar to the defendant, that he never explicitly stated in his post he would kill the judges, but only that they "deserved to be killed." *Id.* at 414. Turner argued that his post could not constitute a threat because "a 'close syntactical analysis' of his statements reveals that he used only the passive voice." *Id.* at 422 ("Because he never explicitly wrote, 'I will kill them,' Turner claims, his words cannot reasonably have been interpreted as a threat."). The Second Circuit, however, rejected this argument, and held that a "rigid adherence to the literal meaning of a communication without regard to its reasonable connotations derived from its ambience," would leave society "powerless against the ingenuity of threateners . . . by an implied menace as by a literal threat." *Id.* at 422-23.

The *Turner* court further held that "[a]n absence of explicitly threatening language does not preclude the finding of a threat," and the determination of whether or not a statement is a true threat "is a question generally best left to a jury." *Id.* at 424; *see also Stock*, 728 F.3d at 298 ("In the usual case, whether a communication constitutes a threat or a true threat 'is a matter to be decided by the trier of fact.'") (citing cases from multiple circuits). Pertinent to the case at hand, the *Turner* court concluded that the defendant's argument depended too much on "literal denotation and syntax," but that threats "need not be explicit nor conveyed with the grammatical precision of an Oxford don." *Turner*, 720 F.3d at 425.

The Tenth Circuit reached a similar conclusion in *United States v. Wheeler*, 776 F.3d 736 (10th Cir. 2015). The *Wheeler* court rejected the defendant's claim that

his alleged threatening statements were merely "exhortations to unspecified others to commit violence" rather than "true threats." *Id.* at 744. Similar to the defendant's arguments that his statements to "Patriots" to kill a particular judge are simply exhortations, "context matters," *Elonis*, 575 U.S. at 747 (Alito, J., concurring in part), even if the defendant did not actually have followers or others under his control, *Wheeler*, 776 F.3d at 746. *See also United States v. Stevenson*, 126 F.3d 662, 664-65 (5th Cir. 1997) (noting that "content, tone, and language" of threat relevant to whether threat intentionally made). In rejecting Wheeler's claim, the Tenth Circuit agreed with the *Turner* court and concluded that such a "wooden . . . interpretation" of the true threats requirement would "leave the state powerless against the ingenuity of threateners." *Wheeler*, 776 F.3d at 745.

Here, a reasonable jury could readily find that the defendant's statements amount to a specific and concrete targeting of discrete individuals, rather than overheated political rhetoric or nonsensical jest. Because a determination of whether the defendant's statements are true threats or within the ambit of First Amendment protection is best left to a fact-finding jury at trial, the defendant's motion to dismiss the Indictment should be denied.

The defendant's cases cited to the contrary also show that the Indictment and the defendant's alleged threats should be decided by a jury. Each case relied on by the defendant, namely, *United States v. White*, 670 F.3d 498 (4th Cir. 2012), *United States v. Bagdasarian*, 652 F.3d 1113 (9th Cir. 2012), and *United States v. Fenton*, 30 F.Supp.2d 520 (W.D. Penn. 1998), all were presented to a jury rather than dismissed

pretrial. (ECF 30 at 8-10)  Moreover, each case predates the two seminal Supreme Court cases establishing "true threats" jurisprudence, *Elonis* and *Counterman v. Colorado*, 600 U.S. 66, 69 (2023), diminishing their precedential value.

## **CONCLUSION**

For all the foregoing reasons, the Court should deny the defendant's motion to dismiss the Indictment, and the matter should proceed to trial.

Dated:  <u>January 9, 2026</u>                    Respectfully submitted,

DANIEL N. ROSEN
United States Attorney

<u>/s/ *Benjamin Bejar*</u>
BY:   BENJAMIN BEJAR
Assistant United States Attorney
District of Minnesota